1  MENNEMEIER, GLASSMAN & STROUD LLP
   KENNETH C. MENNEMEIER (SBN 113973)
2  LANDON D. BAILEY (SBN 240236)
   980 9th Street, Suite 1700
3  Sacramento, CA 95814-2736
   Telephone:  916-553-4000
4  Facsimile:  916-553-4011
   E-mail:      kcm@mgslaw.com
5
   Attorneys for Plaintiff
6  Transcription Communications Corporation

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12 TRANSCRIPTION COMMUNICATIONS      )  Case No. 08-CV-04418 TEH
   CORPORATION, a California corporation, )
13                                     )  **PLAINTIFF TRANSCRIPTION**
                                       )  **COMMUNICATIONS CORPORATIONS'**
                Plaintiff,             )  **OPPOSITION TO DEFENDANTS FOCUS**
14                                     )  **ENTERPRISES LIMITED, eSCRIPTION,**
   v.                                  )  **INC., AND NUANCE**
15                                     )  **COMMUNICATIONS, INC.'S MOTION**
   JOHN MUIR HEALTH, dba JOHN MUIR    )  **TO DISMISS PLAINTIFF'S FIRST**
16 MEDICAL CENTER and MOUNT           )  **AMENDED COMPLAINT**
   DIABLO MEDICAL CENTER, a California )
17 corporation; FOCUS ENTERPRISES     )  Date:          February 2, 2009
   LIMITED, dba FOCUS INFOMATICS,     )  Time:          10:00 a.m.
18 INC., a Delaware corporation;       )
   eSCRIPTION, INC., a Delaware        )  Judge:         Hon Thelton Henderson
19 corporation; NUANCE                )  Courtroom:     12
   COMMUNICATIONS, INC., a Delaware   )
20 corporation; and DOES 1-10, inclusive, )  Complaint Filed:   July 7, 2008
                                       )  Removal Filed:     September 22, 2008
21              Defendants.            )  Trial Date:        TBD
                                       )
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The TCC-JMH Contractual and Economic Relationships . . . . . . . . . . . . . . . . . . . . . 2

    B.    JMH Purchases eScription Software Based on Misrepresentations . . . . . . . . . . . . . . . 2

    C.    JMH Hires Focus Based on Further Misrepresentations . . . . . . . . . . . . . . . . . . . . . . 3

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Applicable Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    TCC's Allegations Properly State a RICO Claim Against the Nuance Defendants Under U.S.C. Section 1962(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    TCC's Damages Were the Direct, Proximate Result of the Nuance Defendants' Fraudulent Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            a.    TCC's Damages Were Proximately Caused by the Nuance Defendants' Fraudulent Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            b.    The Policy Concerns Articulated in Holmes are Not Present in This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                (1)    TCC is the Only Victim of the Nuance Defendants' Illegal Actions Willing and Able to Pursue its Claim . . . . . . . . . . . . . . 8

                (2)    Determining Damages Attributable to the Nuance Defendants' Conduct Will Not Give Rise to the Concerns Articulated in *Holmes* and *Anza* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.    TCC's Pleadings Are Sufficiently Specific to Meet the Standards of Federal Rule of Civil Procedure 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            a.    TCC Sets Forth, in Extensive Detail, the Nuance Defendants' Fraudulent Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            b.    The Unique Circumstances of This Case Call For Lenity With Respect to Rule 9(b) Heightened Pleading Standards . . . . . . . . . . . . 13

        3.    The Nuance Defendants' Suggestions that RICO is Not Applicable to Commercial Disputes are Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    TCC's First Amended Complaint States Valid Claims for Intentional Interference with Contract and Prospective Economic Advantage . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF CONTENTS (con't)**

1.  TCC's First Amended Complaint Alleges Each Element of the Torts of Intentional Interference with Contract and Intentional Interference with Prospective Economic Advantage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2.  The Nuance Defendants Cannot Escape Liability With Erroneous Claims that the Underlying Agreement Was "At-Will" . . . . . . . . . . . . . . . . . . . . . . . . 16

    a.  California Law Permits Claims for Intentional Interference With "At-Will" Contractual Relations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    b.  The Services Agreements Underlying TCC's Intentional Interference Claims are Not "At-Will" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3.  The Nuance Defendants' Alleged Conduct Supports Claims for Intentional Interference with Contract and Intentional Interference with Prospective Economic Advantage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    a.  Focus and eScription Both Had Knowledge of the Contract and Economic Relationship Between TCC and JMH . . . . . . . . . . . . . . . . . 17

    b.  The Nuance Defendants' Acts Were Designed to Induce JMH to Breach its Agreement and to Disrupt the Economic Relationship Shared by TCC and JMH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    c.  The Nuance Defendants' Acts Caused TCC's Damages . . . . . . . . . . 20

    d.  TCC's Ongoing Economic Relationship with JMH Would Have Yielded Further Economic Benefit But For the Nuance Defendants' Wrongful Interference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    e.  The Nuance Defendants' Interference With TCC's Business Relationship With JMH Was Accomplished Through Independently Wrongful Acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.  Nuance, as Successor-in-Interest to All Claims Against the Nuance Defendants, is Properly Named as a Defendant in this Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

E.  Leave to Amend Should Be Granted, if Necessary, to Cure Any Pleading Deficiencies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**TABLE OF AUTHORITIES**

**STATE CASES**

*Blank v. Kirwan,*
   39 Cal.3d 311 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18, 21

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   11 Cal.4th 376 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 23

*Esbensen v. Userware International, Inc.,*
   11 Cal.App.4th 631 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*H&M Associates v. City of El Centro,*
   109 Cal.App.3d 399 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Karlin v. Zalta,*
   154 Cal.App.3d 953 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal.4th 1134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*Pac. Gas & Electric Co. v. Bear Stearns & Co.,*
   50 Cal.3d 1118 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 18

*Quelimane Co. v. Stewart Title Guarantee Co.,*
   19 Cal.4th 26 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 20

*Ramona Manor Convalescent Hospital v. Care Enterprises,*
   177 Cal.App.3d (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Speegle v. Board of Fire Underwriters,*
   29 Cal.2d 34 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Youst v. Longo,*
   43 Cal.3d 64 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

**FEDERAL CASES**

*Altera Corp. v. Clear Logic, Inc.,*
   424 F.3d 1079 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Aspach v. Bestline Products, Inc.,*
   382 F.Supp. 1083 (N.D. Cal. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bridge v. Phoenix Bond & Indemnity Co.,*
   128 S.Ct. 2131 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 14

*Buckey v. County of Los Angeles,*
   968 F.2d 791 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 19, 23

PLAINTIFF'S OPPO. TO NUANCE DEFENDANT'S MOTION TO DISMISS FAC – 08-CV-04418 TEH

**TABLE OF AUTHORITIES (con't)**

**FEDERAL CASES (con't)**

*City of New York v. Smokes-Spirits.com, Inc.,*
541 F.3d 425 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Corley v. Rosewood Care Center, Inc. of Peoria,*
142 F.3d 1041 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cottman Trans. System, Inc. v. Dubinsky,*
95 F.R.D. 351 (E.D. Penn. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cox v. Administrator U.S. Steel & Carnegie,*
17 F.3d 1386 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Golden Trade, S.R.L. v. Jordache,*
143 F.R.D. 504 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Guaranty Residential Lending, Inc. v. International Mortgage Center, Inc.,*
305 F.Supp.2d 846 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*H.J. Inc. v. Northwestern Bell Telephone Co.,*
492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hall v. Santa Barbara,*
833 F.2d 1270 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Holmes v. Securities Investor Protection Corp.,*
503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lee v. City of Los Angeles,*
250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
416 F.3d 940 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25

*Love v. United States,*
915 F.2d 1242 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19, 24

*Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc,*
833 F.2d 1270 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*National Organization for Women, Inc. v. Scheidler,*
510 U.S. 249 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Neubronner v. Milken,*
6 F.3d 666 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*New England Data Services v. Becher,*
829 F.2d 286 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

**TABLE OF AUTHORITIES (con't)**

2

**FEDERAL CASES (con't)**

3

4  *Odom v. Microsoft Corp.,*
       486 F.3d 541 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14

5  *Oki Semiconductor Co. v. Wells Fargo Bank,*
       298 F.3d 768 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

6

7  *Proctor & Gamble Co. v. Amway Corp.,*
       242 F.3d 539 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8  *River City Markets, Inc. v. Fleming Foods West, Inc.,*
       960 F.2d 1458 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

9

10  *Sebastian International, Inc. v. Russolillo,*
       162 F.Supp.2d 1198 (C.D. Cal 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

11  *Sedima, S.P.R.L. v. Imrex Co., Inc.,*
       473 U.S. 479 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

12

13  *Semegen v. Weidner,*
       780 F.2d 727 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14  *Seville Ind. Machinery Corp. v. Southmost Machinery Corp.,*
       742 F.2d 786 (3rd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

15

16  *Sherman v. Mutual Benefit Life Insurance Co.,*
       633 F.2d 782 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17  *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,*
       720 F.Supp. 805 (N.D. Cal 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18

19  *Sprewell v. Golden State Warriors,*
       266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20  *Traux v. Raich,*
       239 U.S. 33 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

21

22  *Trollinger v. Tyson Foods, Inc.,*
       370 F.3d 602 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23  *United States ex. rel. Bledsoe v. Community Health System, Inc.,*
       501 F.3d 493 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24

25  *United States ex. rel. Lee v. Smithkline Beecham, Inc.,*
       245 F.3d 1048 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

26  *Walling v. Beverly Enterprises,*
       476 F.2d 393 (9th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27

28  *Williams v. Mohawk Industrial, Inc.,*
       465 F.3d 1277 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

## TABLE OF AUTHORITIES (con't)

### FEDERAL CASES (con't)

*Zatkin v. Primuth,*
   551 F.Supp. 39 ((S.D. Cal. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

### DOCKETED CASES

*Baas v. Dollar Tree Stores, Inc.,*
   No. C 07-03108 JSW, 2007 U.S.Dist. LEXIS 65979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Lovesy v. Armed Forces Ben. Association,*
   No. C 07-2745 SBA, 2008 U.S.Dist. LEXIS 93479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States ex. rel. Manion v. St. Luke's Regional Medical Center, Ltd.,*
   No. CV 06-498-S-EJL, 2008 U.S.Dist. LEXIS 25719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

### STATE STATUTES

Civil Code
   Section 1636 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18
   Section 1641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
   Section 1647 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### FEDERAL STATUTES

18 U.S.C.
   Section 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Civil Procedure
   8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 13, 14
   12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 23
   15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# I. INTRODUCTION

Defendants Focus Enterprises, Ltd., dba Focus Infomatics, Inc. (hereinafter "Focus"), eScription, Inc. (hereinafter "eScription"), and Nuance Communications, Inc. (hereinafter "Nuance") (collectively the "Nuance Defendants"), working in concert with one another, have engaged in a course of conduct by which they systematically defrauded medical service providers with promises of medical transcription cost savings without the use of foreign labor, or with other misrepresentations concerning the use of foreign labor by their competitors. eScription sells its "voice recognition" software to medical service providers promising transcription cost savings based on technological advantages, but knowing that the promised cost savings will stem not from technology, but from the use of cut-rate foreign labor by its business partners, the "MTSO Alliance." Focus, a member of eScription's "MTSO Alliance," corroborates eScription's fraud by concealing its use of foreign labor from its client hospitals. Nuance has acquired both Focus and eScription, managing and controlling both businesses and enhancing their ability to collaborate in this fraudulent scheme.

Using these deceptive means, the Nuance Defendants have pried medical transcription business away from many of their honest competitors, such as plaintiff Transcription Communications Corporation (hereinafter "TCC"). However, such unfair competition, harmful as it may be, is only a small part of the damage caused by the Nuance Defendants' wrongful acts. The Nuance Defendants' fraudulent conduct targets medical service providers. The Nuance Defendants blatantly lie to medical service providers (primarily hospitals) about their use of cheap, unreliable overseas labor, leaving such organizations without the ability to make informed choices about who should prepare their important medical records. Worst of all, the Nuance Defendants put the medical records of countless patients throughout the United States at serious risk, as the legal protections and regulations protecting medical record privacy and quality are virtually unenforceable abroad. The dishonest acts of the Nuance Defendants do far more than create an unfair competitive environment for medical transcription service providers like TCC – they also compromise the quality, integrity, and security of the private medical data of thousands of American patients.

1  The Nuance Defendants now attempt to evade responsibility for their dishonest

2  conduct, claiming that TCC's complaint against them is insufficient.  The Nuance Defendants'

3  claim that TCC's 24 pages of allegations are insufficient to put them on notice of the particulars

4  of the fraud they have committed is as disingenuous as it is meritless.  So, too, is the Nuance

5  Defendants' outrageous contention that their fraudulent scheme, specifically calculated to

6  displace companies like TCC (and rather successful in that regard), has not directly caused TCC

7  any harm.  TCC's allegations set forth, in great detail, the Nuance Defendants' fraudulent scheme

8  to deceive medical service providers, as well as their tortious interference with TCC's contract

9  and business relationship with John Muir Health (hereinafter "JMH").  The Nuance Defendants'

10  motion to dismiss TCC's complaint should therefore be denied.

11  ## II.   FACTUAL AND PROCEDURAL BACKGROUND

12  ### A.   The TCC-JMH Contractual and Economic Relationships

13  In December 1999, JMH representatives asked Richard Spall to create a medical

14  transcription services company for the purpose of providing JMH's medical facilities with

15  transcription services.  TCC First Amended Complaint ("FAC") ¶ 10.  JMH told Spall that this

16  would be a lasting, sustainable business opportunity that would persist so long as his company

17  performed its obligations in a satisfactory manner.  FAC ¶ 11; 18.

18  In March and July of 2000, respectively, TCC entered into two written Services

19  Agreements with JMH, thereby becoming JMH's exclusive transcription service provider at its

20  two medical facilities.  FAC ¶¶ 15; 20.  In January 2003, JMH agreed to an extension of the

21  Services Agreements through December 31, 2007.  FAC ¶ 32.  JMH has never complained that

22  TCC failed to perform satisfactory transcription services.  FAC ¶ 59.

23  ### B.   JMH Purchases eScription Software Based on Misrepresentations

24  In August, 2004, eScription, through its marketing partner Eclipsys Corporation,

25  gave a sales presentation to JMH espousing the cost savings available through the use of

26  eScription's "voice recognition" software product.  FAC ¶¶ 40-41.  JMH was led to believe that

27  eScription's "voice recognition" software could reduce its transcription costs with its various

28  technological advantages over competing software.  FAC ¶ 41.  What JMH was not told was that

1 | eScription's "voice recognition" software did not have any technological advantages of note over

2 | competing software. FAC ¶¶ 41; 46; 102. What eScription did have was a preferred provider

3 | program, which consisted of transcription companies, like Focus, that used cut-rate foreign labor

4 | to reduce transcription costs, and who were willing to conceal their use of such labor from client

5 | hospitals like JMH. FAC ¶¶ 41; 52; 96-98; 101.

6 |        Throughout September and October of 2005, eScription consummated its sale to

7 | JMH, never telling JMH the truth about how its customers save money. FAC ¶ 46. Once JMH

8 | had purchased the eScription software, eScription encouraged JMH to hire one of its "preferred

9 | providers," such as Focus, to perform its transcription services. FAC ¶¶ 51; 72; 80.

10 | **C.**    **JMH Hires Focus Based on Further Misrepresentations**

11 |        Early in 2006, shortly after its purchase of eScription software, JMH issued a

12 | Request for Proposal to Provide Transcription Services to John Muir Health ("RFP"). FAC ¶ 53.

13 | Focus submitted a response to JMH's RFP, representing that it would provide medical

14 | transcription services to JMH at a rate significantly lower than that charged by TCC, without the

15 | use of transcriptionists based outside of the United States. FAC ¶¶ 55-56. Focus specifically

16 | represented in response to Section 9.11 of the RFP's "General Vendor Profile" section that it

17 | would comply with all specifications of the RFP, including the requirement that the winning

18 | bidder employ only United States based transcriptionists on JMH's account.[1] FAC ¶ 56. Relying

19 | on this misrepresentation, as well as other misrepresentations and omissions, JMH hired Focus to

20 | perform its transcription services using eScription's software. FAC ¶ 61; 105; 108.

21 |        On July 17, 2006, JMH sent a written notice to TCC purporting to terminate the

22 | Services Agreements, effective October 24, 2006, and ending both the contractual and economic

23 | relationships between JMH and TCC. FAC ¶ 57. Losing JMH's business so devastated TCC

24 | that it was forced to lay off all its employees and cease business operations. FAC ¶ 109.

25 |

26 |

27 |     [1]    JMH's insistence that its transcription services be performed exclusively by United States based transcriptionists arises from general concerns, throughout the medical

28 | industry, regarding the security of American patients' private medical data handled in foreign countries. *See* FAC ¶ 34. For this reason, JMH required that TCC use only United States based transcriptionists on JMH's account. FAC ¶¶ 35-37.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.  ARGUMENT

A.    **Applicable Standard of Review**

In evaluating a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), all facts alleged in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 677 (9th Cir. 2001); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  Rule 12(b)(6) motions are "viewed with disfavor" and "rarely granted." *Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).  Review is based strictly on the contents of the complaint. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling plaintiff to relief." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

B.    **TCC's Allegations Properly State a RICO Claim Against the Nuance Defendants Under U.S.C. Section 1962(c)**

To state a claim under RICO section 1962(c), a party must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).  The Nuance Defendants do not contend that TCC has failed to plead any of these elements.  Rather, the Nuance Defendants challenge TCC's RICO allegations in two other respects.  First, they claim that TCC has not alleged a proximate causal connection between the acts alleged and the damages TCC suffered. *See* Nuance Defendants' Motion, at 5:6-7:27.  Second, they claim that TCC's fraud pleadings are not set forth with sufficient "particularity" to meet the standards of Federal Rule of Civil Procedure 9(b). *See* Nuance Defendants' Motion, at 8:1-9:15.  In addition, the Nuance Defendants suggest that RICO applies exclusively to archetypical "organized crime" situations, not to illegal conduct of otherwise legitimate companies. *See* Nuance Defendants' Motion, at 2:17-19; 7:11-27.  For the reasons set forth below, none of these contentions support dismissal of TCC's RICO complaint.  Accordingly, the Nuance Defendants' motion to dismiss TCC's RICO claims should be denied.

/ / /

/ / /

1          **1.**      **TCC's Damages Were the Direct, Proximate Result of the**

2                    **Nuance Defendants' Fraudulent Scheme**

3          Plaintiffs asserting RICO claims under 18 U.S.C. 1964(c) are required to show

4 injury proximately caused by the defendants' RICO violation. *Bridge v. Phoenix Bond &*

5 *Indemnity Co.*, 128 S. Ct. 2131, 2141-42 (2008); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*,

6 473 U.S. 479, 496 (1985) (RICO plaintiff "only has standing if … he has been injured in his

7 business or property by the conduct constituting the violation").

8          Proximate causation is established where the plaintiff's injuries are "a foreseeable

9 and natural consequence" of the defendant's acts. *Bridge*, 128 S. Ct. at 2144. Proximate cause is

10 "not the same thing as the sole cause." *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d

11 768, 773 (9th Cir. 2002); *accord City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425,

12 443 (2d Cir. 2008) (rule requiring that "proximate cause" be the "sole cause" would "effectively

13 require that a plaintiff's injury be caused by only one source" and "operate to insulate from

14 liability defendants who scheme with others in violation of RICO"). Rather, defendants' conduct

15 is the proximate cause of injury where it is "a substantial factor in the sequence of responsible

16 causation." *Id.*; *accord Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1288 n.5 (11th Cir.

17 2006) (*citing Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1389 (11th Cir. 1994));

18 *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) (wrongful conduct must be a

19 "substantial and foreseeable cause"); *see also Mid Atlantic Telecom, Inc. v. Long Distance*

20 *Services, Inc.*, 18 F.3d 260, 263 (4th Cir. 1994) (causation analysis "should focus on the temporal

21 and circumstantial relationship between the defendant's conduct and the injury suffered by the

22 plaintiff, and the foreseeability that intervening events would cause injury to the plaintiff").

23          As explained below, TCC has alleged damages directly attributable to the Nuance

24 Defendants' fraudulent conduct. TCC's loss of business was a direct, foreseeable, and natural

25 consequence of the Nuance Defendants' fraudulent acts. Indeed, the Nuance Defendants' fraud

26 was specifically calculated to enable Focus to displace TCC as JMH's transcription service

27 provider. Having succeeded in their deceptive scheme, the Nuance Defendants cannot now claim

28 that they did not cause the very harm they intended.

1    **a.    TCC's Damages Were Proximately Caused by the Nuance**

2         **Defendants' Fraudulent Acts**

3         The Nuance Defendants perpetuated a fraudulent scheme calculated to persuade

4    JMH to purchase eScription software and switch its transcription service provider from TCC to

5    an eScription preferred provider (Focus) based on material misrepresentations and omissions.

6    FAC ¶¶ 101-102.  JMH, relying upon the Nuance Defendants' misrepresentations regarding

7    (1) the true (and undesirable) source of any "cost savings" from eScription's "voice recognition"

8    software; and (2) the true (and undesirable) source of labor resources Focus would use to perform

9    services for JMH, abandoned its agreement and existing business relationship with TCC,

10   purchased eScription's software, and gave its transcription work to Focus.  FAC ¶¶ 104-105.

11        If JMH had not been led to believe that it could save substantial sums of money

12   on transcription costs *without the use of overseas labor* by employing eScription's software,

13   combined with Focus' expertise in using that software, JMH never would have broken its

14   agreement with TCC, and would still be doing business with TCC now.[2]  FAC ¶¶ 106-108.  If

15   Focus had not misrepresented its willingness and ability to deliver low-cost transcription services

16   without the use of overseas labor, JMH would not have accepted Focus' bid, and instead would

17   have continued its business relationship with TCC.  FAC ¶¶ 56-57; 101; 107-108; *see also* FAC

18   ¶¶ 59-60 (JMH cited no reason for breaking its agreement with TCC other than the desire to

19   reduce costs using eScription software).  Instead, because the Nuance Defendants induced JMH

20   to break its promises to TCC with fraudulent statements and omissions, and because Focus

21   cheated in the bidding process by lying about its use of foreign labor, TCC lost its account with

22   JMH.  FAC ¶¶ 106; 108.  TCC's loss of the JMH account so devastated TCC that it was forced to

23   lay off its employees and cease business operations entirely.  FAC ¶ 109.  The Nuance

24   Defendants' fraudulent conduct, calculated specifically to induce JMH to move its transcription

25   work from TCC to Focus, was the direct cause of all of TCC's losses.  FAC ¶¶ 107-109.

---

27   [2]    JMH demonstrated its intolerance of foreign transcription labor when it demanded
28   that TCC sign an addendum to the Services Agreements forbidding its use. *See* FAC ¶¶ 34-37.
     It is precisely for this reason that JMH's RFP expressly required that its transcription service
     provider employ only United States based transcriptionists on JMH's account. *See* FAC ¶ 56.

471.01.PLE.oppo.nuance.mot.dismiss.Brief.wpd        6

1   　　　　The Nuance Defendants argue that TCC's injuries should not be attributed to their

2   fraudulent conduct because "intervening factors could have caused or contributed"to the alleged

3   harm.  *See* Nuance Defendants' Motion, at 6:16-17.  However, imaginary scenarios in which

4   TCC would have suffered the same injuries without the Nuance Defendants' misconduct cannot

5   absolve them of liability.  Proximate cause is "not the same thing as the sole cause." *Oki*

6   *Semiconductor Co.*, 298 F.3d at 773.  The Nuance Defendants point to nothing in the complaint

7   itself suggesting that proximate cause is not properly alleged.  Hypothetical contributing factors

8   extrinsic to the facts alleged cannot support a motion to dismiss a complaint. *See Buckey*, 968

9   F.2d at 794 (review on motion to dismiss restricted to the facts alleged in the complaint).

10   　　　　Moreover, courts considering facts similar to those alleged here have found

11   proximate cause to be present, even where intervening factors theoretically could have

12   contributed to the alleged harm.  For example, a defendant's false representations of compliance

13   with certain environmental laws and regulations, which gave the defendant a competitive

14   advantage over the plaintiff for bidding on Navy contracts, were found to be the cause of the

15   plaintiff's inability to obtain lucrative Navy contracts, and thus caused the financial injuries

16   associated with such lost contracts. *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720

17   F. Supp. 805, 808 (N.D. Cal 1989).  A proximate causal connection exists between a defendant's

18   false statements to mutual potential customers and the plaintiff's resulting injuries to competitive

19   position. *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 565 (5th Cir. 2001) (defendant

20   allegedly spread false rumors concerning plaintiff's connections with Satanic worship using

21   mails and wires, proximately causing customers to boycott plaintiff's products).  And the

22   Supreme Court recently held that a plaintiff's losses of valuable tax liens in the context of a

23   bidding process, acquired by the defendants through unfair advantages created by mail and wire

24   fraud, were "the direct result of [the defendants'] fraud." *Bridge*, 128 S. Ct. at 2144.  In these

25   cases, the fact that intervening causes could have theoretically contributed to the injuries alleged

26   did not preclude a finding that the defendants' fraudulent conduct was a "substantial factor"

27   proximately causing those losses. *See Oki Semiconductor Co.*, 298 F.3d at 773 ("substantial

28   factor in the sequence" of causation is a proximate cause).

1

          **b.**      **The Policy Concerns Articulated in *Holmes* are Not Present in**

2

                            **This Case**

3           In *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), the

4   Supreme Court articulated three motivating principles for RICO's proximate causation

5   requirement. First, less direct injuries can make it difficult to ascertain what damages are

6   attributable to the RICO defendants' conduct. *Holmes*, 503 U.S. at 545. Second, undesirably

7   complex rules may be necessary to apportion damages associated with remote injuries. *Id.*

8   Finally, grappling with such damage calculation issues is unnecessary where more direct victims

9   could act as "private attorneys general" to advance RICO's deterrence interests. *Id.* Courts

10   considering causation issues in the RICO context consider these factors when determining

11   whether proximate cause is present. *See, e.g., City of New York*, 541 F.3d at 442; *Williams*, 465

12   F.3d at 1290. As discussed below, the policy concerns articulated in *Holmes* are not present here.

13             **(1)**     **TCC is the Only Victim of the Nuance Defendants'**

14                      **Illegal Actions Willing and Able to Pursue its Claim**

15           The Nuance Defendants argue that TCC's injuries could not have been caused by

16   their fraud because all misrepresentations alleged were made to JMH, not TCC. *See Nuance*

17   Defendants' Motion, at 6:7-12. This theory has been unequivocally rejected by the Supreme

18   Court. See *Bridge*, 128 S. Ct. at 2143 (rejecting the erroneous theory that "a fraudulent

19   misrepresentation can only cause legal injury to those who rely on it").

20           Nor can JMH be relied upon to "vindicate its own rights," as the Nuance

21   Defendants suggest.[3] JMH has *lowered* its medical transcription costs due to Focus' use of

22   inexpensive foreign transcription labor. Even if JMH were aware of the fraud being perpetuated

23   against it, and were motivated to "vindicate its rights," JMH would have no damages to claim.[4]

24   Despite the Nuance Defendants' contentions to the contrary, the mere ability to hire a lawyer

25

26          [3]    *See* Nuance Defendants' Motion, at 5:23.

27          [4]    Nor can JMH's patients claim any damages at this time. Although the Nuance

28   Defendants' secretive cost-cutting measures have put the integrity, quality, and security of those
patients' medical records at risk, no legal remedy is available to those patients – who are, in any
event, likely unaware that their private medical information is in jeopardy.

1  does not put one in a position to expose and eradicate wrongdoing.[5]  Accordingly, the only party

2  in a position to challenge the Nuance Defendants' widespread fraud is TCC.

3        (2)    **Determining Damages Attributable to the Nuance**

4                  **Defendants' Conduct Will Not Give Rise to the**

5                  **Concerns Articulated in *Holmes* and *Anza***

6        The concerns expressed by the *Holmes* Court, and reiterated in *Anza v. Ideal Steel*

7  *Supply Corp.*, 547 U.S. 451 (2006), are not present in this case.  Notwithstanding the Nuance

8  Defendants' contrived exasperation over hypothetical damage assessment difficulties,[6] no

9  *Holmes/Anza* issues potentially complicating damage apportionment in this matter exist here.

10        In *Anza*, the plaintiff alleged RICO claims against a market competitor for

11  defrauding the New York tax authorities through mail and wire fraud, and using proceeds from

12  the alleged tax fraud to lower prices and attract a larger market share.  *Anza*, 547 U.S. at 457-458.

13  The *Anza* Court, applying the principles of *Holmes*, reasoned that because the defendant's total

14  market share (and the many individual customers making up that market share) was certainly

15  influenced by factors other than the alleged fraud, apportioning damages would require the sort

16  of "complex assessment" the *Holmes* Court warned against.  *Id.* at 459.[7]  The *Anza* Court also

17  recognized that the immediate victim of the alleged fraud – the State of New York – could be

18  expected to pursue appropriate and straightforward tax fraud remedies, thus obviating the need

19  for complex civil RICO actions concerning that same tax fraud.  *Id.* at 460.  Under these

20  circumstances, and in light of the *Holmes* factors, the *Anza* Court found that the connection

21  between plaintiff's alleged harms (lost market share) and defendants' alleged RICO acts (tax

22  fraud) was too attenuated to support relief.  *Id.* at 461.

23

24       [5]    *See* Nuance Defendants' Motion, at 6:9-12.

25       [6]    *See* Nuance Defendants' Motion, at 6:22-7:3.

26
27       [7]    The *Anza* Court reasoned that calculation of damages would need to involve "calculating the portion of [defendants'] price drop attributable to the [alleged tax fraud]," followed by calculating "the portion of [plaintiff's] lost sales attributable to the relevant part of

28  the price drop." *Anza*, 547 U.S. at 459.  The *Anza* Court recognized that such calculations are precisely the sort of "intricate, uncertain inquiries" the *Holmes* Court aimed to prevent.  *Id.*

471.01.PLE.oppo.nuance.mot.dismiss.Brief.wpd     9

1   The concerns raised in *Anza* are not present here. First, as explained above, JMH,
2   unlike the State of New York, has suffered no direct financial harm as a result of its reliance on
3   the Nuance Defendants' fraud, and thus is unable (and unwilling) to pursue any action in
4   connection with that fraud. Conversely, the State of New York regularly prosecutes individuals
5   and companies who commit tax fraud, is obviously capable of doing so again, and has ample
6   motivation to pursue such claims. Further, the fraud alleged in *Anza* was not directed at the
7   plaintiff's customers, but rather at unrelated governmental tax authorities. Unlike the fraud in
8   this case, directly aimed at TCC's customer and calculated specifically to disrupt TCC's business
9   relationship with that customer, the alleged fraud in *Anza* was aimed at a municipal entity with
10  no business relationship with any party. Finally, while the injuries alleged in *Anza* related to
11  general market share and the loss of many customers, all of whom certainly have any number of
12  reasons for choosing one competitor's product over another's, the injuries alleged here relate
13  specifically to a single client (JMH). There is no need to determine who among a large group of
14  customers was influenced by the alleged fraud. Calculating damages associated with the loss of
15  one customer, based on misrepresentations made directly to that customer, will not be the least
16  bit daunting. The Nuance Defendants' manufactured concerns in this regard are misplaced.

17  **2.   TCC's Pleadings Are Sufficiently Specific to Meet the**
18  **Standards of Federal Rule of Civil Procedure 9(b)**

19  Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud …
20  the circumstances constituting fraud … shall be stated with particularity. Malice, intent,
21  knowledge, and other condition of mind of a person may be averred generally." However, this
22  "particularity" requirement "does not require...the pleading of detailed evidentiary matter."
23  *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973). Rule 9(b)'s particularity
24  requirements "must be read in harmony with Federal Rule of Civil Procedure 8's requirement of
25  a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108
26  JSW, 2007 U.S. Dist. LEXIS 65979 at *5 (N.D. Cal. August 29, 2007); *see also Zatkin v.*
27  *Primuth*, 551 F. Supp. 39, 42 (S.D. Cal. 1982) (focusing exclusively on Rule 9(b)'s particularity
28  requirement "is too narrow an approach and fails to take account of the general simplicity and

1   flexibility contemplated by the rules [of pleading]"). Accordingly, fraud pleadings are sufficient

2   where they are "specific enough to give defendants notice of the particular misconduct which is

3   alleged to constitute the fraud charged so that they can defend against the charge." *Neubronner*

4   *v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993); *see also Semegen v. Weidner*, 780 F.2d 727, 731 (9th

5   Cir. 1986) (purpose of Rule 9(b) is to give fair notice to each defendant of the conduct alleged).

6          Here, TCC describes, in detail, the widespread, ongoing fraud at issue.  The

7   Nuance Defendants cannot honestly claim that they do not have adequate notice of the

8   misconduct alleged to defend themselves.  The Nuance Defendants' insistence on the pleading of

9   various minutia is a transparent attempt to evade responsibility by taking advantage of the unique

10  circumstances of this case.  Such abuse of Rule 9(b) should not be permitted.

11         **a.       TCC Sets Forth, in Extensive Detail, the Nuance Defendants'**

12                    **Fraudulent Scheme**

13         TCC's allegations concerning the Nuance Defendants' fraud are extensive and

14  detailed.  *See* FAC ¶¶ 39-57; 86-110.  While TCC is not, at this time, aware of every minor detail

15  of the manner in which this fraudulent scheme has been executed, TCC has alleged more than

16  enough detail to give the Nuance Defendants notice of the charges against them, such that they

17  are able to defend themselves.  *See Neubronner*, 6 F.3d at 671.

18         The Nuance Defendants argue that the pleadings fail to set forth eScription's

19  misrepresentations with sufficient particularity because they do not describe the "'who-what-

20  when-where-how" details" of eScription's fraudulent conduct.  *See* Nuance Defendants' Motion,

21  at 8:15-9:3.  The Nuance Defendants' contention disregards the nature of eScription's fraudulent

22  conduct.  eScription's misrepresentations were *by omission*.[8]  Pleadings of fraud by omission

23  need not – and, indeed, cannot – specify the particular "time, place and nature" of the alleged acts

24  of misrepresentation, because the complaint does not arise from *acts* that can be described;

25  rather, it is "the *silence* or failure to act … which is complained of." *Cottman Trans. Sys., Inc. v.*

26

27         [8]      eScription's fraud arises from the fact that it failed to inform JMH that a
    significant portion of any medical transcription cost savings it would realize upon purchasing
28  eScription software would stem not from any purported technological advantages of the software,
    but from the fact that eScription's preferred providers used cheap foreign labor. FAC ¶ 41.

1    *Dubinsky*, 95 F.R.D. 351, 353 (E.D. Penn. 1982) (emphasis in original); *accord Golden Trade,*

2    *S.R.L. v. Jordache,* 143 F.R.D. 504, 508 (S.D.N.Y. 1992) (Rule 9(b) does not require

3    specification of time, place and nature of misrepresentation "alleged to be in the nature of an

4    omission"). Accordingly, TCC's allegations, which describe eScription's fraudulent omissions

5    in great detail, are more than adequate to satisfy Rule 9(b)'s requirement of specificity.

6         The Nuance Defendants further complain that certain of TCC's fraud allegations,

7    alleged "between a range of dates," are not alleged with sufficient specificity as to time.

8    However, where, as here, a scheme involving multiple instances of fraud over time is alleged,

9    Rule 9(b) does not require plaintiffs "to allege, in detail, all facts supporting each and every

10    instance of [fraud] over a multi-year period." *United States ex. rel. Lee v. Smithkline Beecham,*

11    *Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001); *accord United States ex. rel. Bledsoe v. Cmty. Health*

12    *Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007) (purpose of Rule 9(b) is "not to reintroduce

13    formalities to pleading"); *United States ex. rel. Manion v. St. Luke's Regional Med. Center, Ltd.*,

14    No. CV 06-498-S-EJL, 2008 U.S. Dist. LEXIS 25719 at *9 (D. Idaho March 31, 2008) (requiring

15    plaintiff to "provide specific information as to exactly when alleged violations took place over a

16    multi-year time frame … would make Rule 9(b) carry more weight than it was meant to bear")

17    (*citing Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Seville Ind. Machinery*

18    *Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3rd Cir. 1984) (Rule 9(b) does not

19    specifically require "date, place or time" allegations; plaintiffs may "use alternative means of

20    injecting precision and some measure of substantiation into their allegations of fraud").

21         TCC has alleged that Focus has committed, and continues to commit, an ongoing

22    fraud against JMH by both (1) affirmatively misrepresenting that it does not use foreign labor on

23    JMH's account; and (2) failing to inform JMH that it does, in fact, use foreign labor on JMH's

24    account. FAC ¶¶ 96-98. TCC alleged, in detail, at least one instance in which Focus

25    affirmatively misrepresented to JMH that Focus would service JMH's account without the use of

26    foreign labor. FAC ¶¶ 56-57 (Focus represented in Section 9.11 of the "General Vendor Profile"

27    section of its response to JMH's RFP that it would not use transcription labor based outside of

28    the United States to provide JMH's transcription services). Accordingly, Focus is well aware of

1   the specific fraud allegations brought against it, and has "more than enough notice to prepare [its]

2   defense." *Aspach v. Bestline Products, Inc.*, 382 F. Supp. 1083, 1091 (N.D. Cal. 1974).

3               b.        **The Unique Circumstances of This Case Call For Lenity With**

4                         **Respect to Rule 9(b) Heightened Pleading Standards**

5               TCC's situation is different than that of a typical fraud plaintiff, in that TCC is

6   alleging fraud perpetrated *against third parties*. Accordingly, TCC does not have access to the

7   same level of detail as a plaintiff that has been defrauded directly. This Court should assess the

8   sufficiency of TCC's fraud allegations in light of these unique circumstances.

9               Many courts have recognized that where information concerning the details of a

10  fraudulent scheme is known to the defendants, but not accessible to the plaintiff, Rule 9(b)'s

11  "particularity" requirements should be relaxed. *See, e.g., Corley v. Rosewood Care Center, Inc.*

12  *of Peoria*, 142 F.3d 1041, 1051 (7th Cir. 1998) (Rule 9(b) "must be relaxed where the plaintiff

13  lacks access to all the facts necessary to detail his claim"); *New England Data Services v. Becher*,

14  829 F.2d 286, 291 (1st Cir. 1987) ("outline of the general scheme to defraud" sufficient where

15  plaintiff "was not directly involved in the alleged transaction"); *Baas v. Dollar Tree Stores, Inc.*,

16  No. C 07-03108 JSW, 2007 U.S. Dist. LEXIS 65979 at *5-6 (N.D. Cal. August 29, 2007) (Rule

17  9(b) should be "relaxed with respect to matters within the opposing party's knowledge" and

18  when "plaintiffs can not be expected to have personal knowledge of the relevant facts");

19  *Guaranty Residential Lending, Inc. v. Int'l Mortgage Center, Inc.*, 305 F. Supp. 2d 846; 853

20  (N.D. Ill. 2004). Such lenity is particularly appropriate where, as here, the plaintiff is not the

21  party allegedly defrauded. *See Corley*, 142 F.3d at 1051 (plaintiff entitled to lenient application

22  of Rule 9(b) where "the plaintiff alleges a fraud against one or more third parties"); *New England*

23  *Data Services*, 829 F.2d at 291 ("Where there are multiple defendants, as here, and where the

24  plaintiff was not directly involved in the alleged transaction, the burden on the plaintiff to know

25  exactly when the defendants called each other, and the contents thereof, is not realistic.").

26              The Nuance Defendants' demands of further detail do not arise from an actual

27  need for that detail in order to understand and defend against TCC's claims. Those demands are

28  an effort to use Rule 9(b) inappropriately to avoid liability for their fraudulent conduct. TCC has

1  alleged the Nuance Defendants' fraudulent scheme in substantial detail.  Further detail will

2  emerge through discovery, but the Nuance Defendants have more than enough information to

3  prepare their defense now.  Accordingly, the Nuance Defendants' insistence on formalistic

4  pleading beyond that which is possible under the circumstances is unnecessary, unjust, and

5  inconsistent with the spirit of Federal Rules of Civil Procedure 8 and 9(b).

6  　　　　　　　　**3.**　　　**The Nuance Defendants' Suggestions that RICO is Not Applicable to**

7  　　　　　　　　　　　**Commercial Disputes are Without Merit**

8  　　　　　　　　The Nuance Defendants suggest that RICO is strictly an "organized crime statute"

9  that is not appropriate in the context of commercial disputes.[9]  However, as the Supreme Court

10  recently observed, the Court has "repeatedly refused to adopt narrowing constructions of RICO in

11  order to make it conform to a preconceived notion of what Congress intended to proscribe."

12  *Bridge*, 128 S. Ct. at 2145.[10]  The Nuance Defendants' narrow view of RICO has been

13  unequivocally rejected by both the Supreme Court and the Ninth Circuit Court of Appeals.  *See*

14  *Sedima*, 473 U.S. at 497-498 ("RICO is to be read broadly" in accordance with "Congress' self-

15  consciously expansive language and overall approach" and "its express admonition that RICO is

16  to 'be liberally construed to effectuate its remedial purposes'"); *Odom*, 486 F.3d at 545-547

17  (discussing the impropriety of "judicial resistance to RICO, manifested in narrow readings of its

18  provisions by lower federal courts").  The Supreme Court has made abundantly clear that RICO

19  actions are not limited to circumstances popularly associated with archetypical organized crime.

20  *See Sedima*, 473 U.S. at 499 (noting that in enacting RICO, "Congress wanted to reach both

21  'legitimate' and 'illegitimate' enterprises.  The former enjoy neither an inherent incapacity for

22  criminal activity nor immunity from its consequences.")

23  

24  　　　　　[9]　　　*See* Nuance Defendants' Motion, at 2:17-19; 7:11-27.

25  　　　　　[10]　　　*See National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 252
26  (1994) (rejecting the argument that "RICO requires proof that either the racketeering enterprise
   or the predicate acts of racketeering were motivated by an economic purpose"); *H.J. Inc. v.*
27  *Northwestern Bell Telephone Co.*, 492 U.S. 229, 244 (1989) (rejecting "the argument for reading
   an organized crime limitation into RICO's pattern concept"); *Sedima*, 473 U.S. at 481 (rejecting
28  the view that RICO provides a private right of action "only against defendants who have been
   convicted on criminal charges, and only where there had occurred a 'racketeering injury'").

471.01.PLE.oppo.nuance.mot.dismiss.Brief.wpd　　　　　14

C.    **TCC's First Amended Complaint States Valid Claims for Intentional**
      **Interference with Contract and Prospective Economic Advantage**

    1.    **TCC's First Amended Complaint Alleges Each Element of the Torts**
            **of Intentional Interference with Contract and Intentional Interference**
            **with Prospective Economic Advantage**

The elements of intentional interference with contractual relations and intentional interference with prospective economic advantage are similar.  Both torts require (1) the existence of an economic relationship between the plaintiff and a third party;[11] (2) defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption; and (5) resulting damages.  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (enumerating elements of intentional interference with contractual relations); *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985) (enumerating elements of intentional interference with prospective economic advantage claim).  However, unlike interference with contract claims, interference with prospective economic advantage claims also require that the defendants' acts are independently wrongful.  *Quelimane Co. v. Stewart Title Guarantee Co.*, 19 Cal. 4th 26, 55 (1998) (interference with contract claim *does not* require "wrongful" conduct apart from contract interference itself); *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1208 (C.D. Cal 2001) (elements of intentional interference with contractual relations and prospective economic advantage are "identical, except that interference with competitive advantage requires that the defendant's conduct is also 'wrongful'") (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-393 (1995)).

TCC's FAC sets forth allegations establishing each element of both interference claims.  TCC alleges multiple valid contractual agreements between TCC and John Muir Health.  *See* FAC ¶¶ 15; 20; 24-32; 34-37.  TCC also alleges an existing economic relationship with

---

[11]    By definition, the two torts differ with respect to the nature of the disrupted "economic relationship."  In the case of interference with contractual relations, a valid contract must exist. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).  With respect to interference with prospective economic advantage, an economic relationship with a reasonable probability of future economic benefit to the plaintiff must be shown. *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).

1   JMH, with a probability of future economic benefit. *Id.* at ¶¶ 11-12; 83.  TCC alleges that the

2   Nuance Defendants were aware of these relationships, and intentionally acted to disrupt them.

3   *Id.* at ¶¶ 40-42; 46-47; 55-57; 70-74; 78-82.  TCC alleges that the economic relationships at issue

4   were in fact disrupted, resulting in substantial economic damages.  *Id.* at 48-52; 58-61; 74; 76;

5   82-83; 85; 109.  These allegations state causes of action for both intentional interference with

6   contractual relations and intentional interference with prospective economic advantage.

7              **2.       The Nuance Defendants Cannot Escape Liability With Erroneous**

8                        **Claims that the Underlying Agreement Was "At-Will"**

9                   **a.       California Law Permits Claims for Intentional Interference**

10                            **With "At-Will" Contractual Relations**

11              The Nuance Defendants argue that claims for interference with contract are

12   improper *per se* where the contract is "at will."  However, California law has long held that

13   interference with an at-will contract is actionable interference with the contractual relationship,

14   on the theory that a contractual relationship "at the will of the parties, respectively does not make

15   it one at the will of others." *Speegle v. Board of Fire Underwriters*, 29 Cal. 2d 34, 39 (1946)

16   (superceded by statute on other grounds, *Karlin v. Zalta*, 154 Cal. App. 3d 953, 973 (1984))

17   (*quoting Traux v. Raich*, 239 U.S. 33, 38 (1915)); *see also Pac. Gas & Elec. Co. v. Bear Stearns*

18   *& Co.*, 50 Cal. 3d 1118, 1127 (1990) (observing that courts "have reiterated in case after case

19   that the contractual relationship is at the will of the parties, not at the will of outsiders").

20              The Nuance Defendants' argument relies on a single, unpublished case, *Lovesy v.*

21   *Armed Forces Ben. Ass'n.*, No. C 07-2745 SBA, 2008 U.S. Dist. LEXIS 93479 at \*31 (N.D. Cal

22   March 13, 2008).  This reliance is misplaced.  *Lovesy* cites *Reeves*, 33 Cal. 4th at 1151, for the

23   proposition that interference with "an at-will contract is more properly viewed as interference

24   with a prospective economic advantage." *Id.*  *Reeves* holds no such thing.  Rather, *Reeves*, in

25   upholding an award for wrongfully inducing the termination of multiple at-will employment

26   contracts, held that "a plaintiff may recover damages for intentional interference with an at-will

27   *employment relation* under the same California standard applicable to claims of intentional

28   interference with prospective economic advantage." *Reeves*, 33 Cal. 4th at 1152 (emphasis

1   added).  The *Reeves* holding is expressly limited to the employment context.  The Services

2   Agreements at issue are not employment contracts, so *Lovesy* and *Reeves* are not applicable here.

        **b.      The Services Agreements Underlying TCC's Intentional**

4                   **Interference Claims are Not "At-Will"**

5           Even if the Nuance Defendants' characterization of California law concerning

6   interference with at-will contracts were accurate, the Services Agreements at issue are not "at-

7   will" agreements.  The Services Agreements are term agreements with specific, clearly delineated

8   termination dates.  The Nuance Defendants' bare, unsupported claim that the Services

9   Agreements are "undeniably at-will contracts" is simply wrong.[12]

10          **3.      The Nuance Defendants' Alleged Conduct Supports Claims for**

11                  **Intentional Interference with Contract and Intentional Interference**

12                  **with Prospective Economic Advantage**

13          **a.      Focus and eScription Both Had Knowledge of the Contract**

14                  **and Economic Relationship Between TCC and JMH**

15          Plaintiffs alleging intentional interference with business relations torts must allege

16  that the defendant had knowledge of the contract or business relationship at issue.  *Pac. Gas &*

17  *Elec. Co.*, 50 Cal. 3d at 1126; *Blank v. Kirwan*, 39 Cal. 3d at 330; *Ramona Manor Convalescent*

18  *Hosp. v. Care Enterprises*, 177 Cal. App. 3d 1120, 1132 (1986).

19

20         [12]      *See* Nuance Defendants' Motion, at 10:15-19.  The Nuance Defendants, like their

21  co-defendant JMH, erroneously presume that a contractual termination provision specifying a

      written notice requirement for termination, but silent on acceptable cause for such termination,

22  necessarily renders the entire agreement terminable at will.  This presumption is contrary to

23  California law.  *See Esbensen v. Userware Int'l, Inc.*, 11 Cal. App. 4th 631, 636 (1992)

      (termination provision in contract for one-year term expressly permitting termination upon two

24  weeks written notice is "silent on the acceptable grounds for termination"); *Sherman v. Mutual*

25  *Benefit Life Ins. Co.*, 633 F.2d 782, 784 (9th Cir. 1980) (clause stating that the agreement "may

      be terminated at any time by either party, by giving the other sixty days' notice to that effect"

26  does not indicate whether cause is a termination prerequisite).  This issue has been thoroughly

27  briefed in the context of JMH's motion to dismiss TCC's complaint.  Rather than reiterate those

      arguments here in their entirety, TCC hereby expressly incorporates, by this reference, the points

28  and authorities set forth in Plaintiff Transcription Communications Corporations' Opposition to

      John Muir Health's Motion to Dismiss Plaintiff's First Amended Complaint, filed with this

Court on November 17, 2008 (Docket No. 30).

1       Here, TCC has alleged that eScription is, and at all relevant times was, aware of

2   both the contractual relationship and the ongoing business relationship between JMH and TCC.

3   FAC ¶¶ 70; 79.  TCC also alleges that Focus is, and at all relevant times was, aware of the

4   contractual and ongoing business relationships between TCC and JMH, or at least was aware that

5   JMH had a contract and business relationship with someone to provide medical transcription

6   services.  FAC ¶¶ 71; 78.  These allegations are sufficient to meet the "knowledge" requirement

7   of the business interference torts alleged.

8       The Nuance Defendants apparently concede that the allegations against eScription

9   are sufficient in this regard.  Nonetheless, they argue that the allegations against Focus are

10  inadequate because Focus only knew that JMH had a contract and ongoing business relationship

11  with "some transcription provider."  *See* Nuance Defendants' Motion, at 11:19-21.  This

12  argument finds no support in California law.  Plaintiffs need not allege that the intentional

13  interference defendant was aware of the identity of their tort victim.  *Ramona Manor*

14  *Convalescent Hosp.*, 177 Cal. App. 3d at 1132 (knowledge of injured party's identity not

15  necessary to business interference tort claims); *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079,

16  1092 (9th Cir. 2005) ("When the defendant performs the act that causes the interference, the

17  defendant need not know exactly who is a party to the contract, so long as he knows he is

18  interfering with a contractual relationship."); *Sebastian Int'l, Inc.*, 162 F. Supp. 2d at 1203

19  (knowledge of third party's identity not necessary to establish contract interference intent).  The

20  Nuance Defendants' argument, predicated on a misunderstanding of California law, must fail.

21              **b.      The Nuance Defendants' Acts Were Designed to Induce JMH**

22                      **to Breach its Agreement and to Disrupt the Economic**

23                      **Relationship Shared by TCC and JMH**

24      Business interference torts require that the defendants' intentional acts are

25  designed to induce a breach or disruption of the relationship.  *Pac. Gas & Elec. Co.*, 50 Cal. 3d at

26  1126; *Blank*, 39 Cal. 3d at 330; *Quelimane*, 19 Cal. 4th at 56.  Plaintiffs may satisfy this element

27  by pleading that the defendant intended to interfere with the plaintiff's business relationship.

28  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003).

1    Here, TCC alleges that both Focus and eScription, by their intentional acts,

2    intended to induce breach or disruption of both the contractual relationship and the ongoing

3    business relationship between TCC and JMH.  FAC ¶¶ 74; 82.  Specifically, TCC alleges that

4    eScription induced JMH to purchase eScription software through misrepresentations concerning

5    eScription's ability to deliver cost savings, and then encouraged JMH to move its transcription

6    work to a member of its "MTSO Alliance Program," including Focus, but not TCC.  *Id.* at ¶¶ 72;

7    80.  TCC also alleges that Focus induced JMH to abandon its existing relationships with TCC

8    with misrepresentations concerning its ability to deliver cost savings without the use of foreign

9    labor.  *Id.* at 73; 81.  These allegations are more than adequate to meet the intent requirement of

10   the intentional interference torts.

11   The Nuance Defendants argue that TCC's allegations are inadequate against

12   Focus because Focus would have assumed, based on the initiation of a competitive bidding

13   process, that JMH had terminated its prior contracts with transcription companies, and thus could

14   not have intended to disrupt any such contracts.  *See* Nuance Defendants' Motion, at 12:5-11.

15   This argument is rooted entirely in speculation, and finds no support in law or reason.  The

16   initiation of a competitive contract bidding process does not mean, *ipso facto*, that existing

17   contracts have been or will be abandoned.  Moreover, whatever Focus may or may not have

18   "assumed" in this regard is a matter of proof that does not appear in TCC's pleadings.  Such

19   hypothetical "assumptions" are not properly considered at this time, regardless of how

20   "reasonable" the Nuance Defendants assert them to be.  *See Buckey*, 968 F.2d at 794.

21   The Nuance Defendants further argue that TCC "has not provided any evidence

22   that any actions of eScription were undertaken with 'substantial certainty' that its acts would

23   disrupt" the TCC-JMH relationships.  *See* Nuance Defendants' Motion, at 12:12-15.  This

24   argument disregards the applicable standard of review for motions to dismiss, which is calculated

25   to weigh the adequacy of pleadings, not "evidence." *See Love*, 915 F.2d at 1245 (review of Rule

26   12(b)(6) motions to dismiss is "based on the contents of the complaint, the allegations of which

27   we accept as true and construe in the light most favorable to the plaintiff").  In any event, TCC

28   alleges not only that eScription (and Focus) acted with substantial certainty that their acts, if

471.01.PLE.oppo.nuance.mot.dismiss.Brief.wpd            19

PLAINTIFF'S OPPO. TO NUANCE DEFENDANT'S MOTION TO DISMISS FAC – 08-CV-04418 TEH

1   successful, would disrupt the TCC-JMH relationships; TCC alleges that both eScription and

2   Focus specifically *intended* such a disruption.  See FAC ¶ 74 (eScription and Focus "intended to

3   induce … a breach or disruption of the Services Agreements and related addenda"); ¶ 82

4   (eScription and Focus "intended to induce … a disruption of the ongoing business relationship

5   between JMH and TCC").  Despite the Nuance Defendants' efforts to avoid these allegations

6   with bare speculation about what TCC "apparently believed" in submitting its own RFP

7   response,[13] TCC's allegations that eScription and Focus intended to disrupt the JMH-TCC

8   relationships easily meet the intentional interference torts' "intent" requirements.  *See Korea*

9   *Supply Co.*, 29 Cal. 4th at 1154 (pleading intent to disrupt ongoing business relationship

10  adequate to satisfy pleading requirement for element of intent).

11                     c.        **The Nuance Defendants' Acts Caused TCC's Damages**

12                     TCC adequately alleges the necessary causal connection between Focus and

13  eScriptions' acts and the resulting disruption of the JMH-TCC relationships.  *See Quelimane*, 19

14  Cal. 4th at 55 (plaintiff must plead actual breach or disruption of relationship); *H&M Associates*

15  *v. City of El Centro*, 109 Cal. App. 3d 399, 405 (1980) (defendant's conduct must cause breach

16  or disruption alleged).  TCC alleges that eScription sold its product to JMH under false pretenses,

17  and then pressured JMH to abandon its existing transcription agreements and contract with a

18  member of eScription's "MTSO Alliance Program."  FAC ¶¶ 72; 80.  TCC also alleges that

19  Focus misrepresented its willingness and ability to deliver cost savings to JMH without the use

20  of foreign labor, and based on those misrepresentations induced JMH to abandon its existing

21  relationship with TCC.  FAC ¶¶ 73; 81.  TCC alleges that both Focus and eScription engaged in

22  these acts for the purpose of inducing JMH to abandon its contractual and economic relationships

23  with TCC and allow Focus to provide its transcription services.  FAC ¶¶ 74; 82.  TCC alleges

24  that the loss of these relationships with JMH, caused by the intentional acts of Focus and

25  eScription, has caused TCC's damages.  FAC ¶¶ 76; 85.  Accordingly, TCC's pleadings

26  adequately set forth the causal connection required under the law.

27

28

---

[13]     *See* Nuance Defendants' Motion, at 12:16-22.

471.01.PLE.oppo.nuance.mot.dismiss.Brief.wpd                    20

PLAINTIFF'S OPPO. TO NUANCE DEFENDANT'S MOTION TO DISMISS FAC – 08-CV-04418 TEH

1   The Nuance Defendants contend that TCC's allegations are insufficient because

2   "there is simply no evidence of proximate cause between the alleged misrepresentations of

3   eScription and Focus and the alleged damage to TCC" and that any assertion regarding such a

4   causal connection is "sheer speculation." *See* Nuance Defendants' Motion, at 13:7-11.  Once

5   again, the Nuance Defendants apparently confuse their motion to dismiss for a motion for

6   summary judgment.  The purpose of the Nuance Defendants' motion to dismiss is to evaluate the

7   sufficiency of TCC's complaint, not "evidence."  Here, TCC has alleged that Focus and

8   eScription pressured JMH to abandon its existing relationships with TCC and move its

9   transcription work to Focus, and that those acts caused JMH to do precisely what it was

10   pressured to do.  Such allegations are sufficient to establish, for pleading purposes, the necessary

11   causal connection.  The Nuance Defendants cite no authority suggesting otherwise.

12               **d.      TCC's Ongoing Economic Relationship with JMH Would**

13                    **Have Yielded Further Economic Benefit But For the Nuance**

14                    **Defendants' Wrongful Interference**

15   The first element of all intentional interference claims is the existence of an

16   economic relationship between the plaintiff and third party. *See Blank*, 39 Cal. 3d at 330.

17   Because interference with prospective advantage claims need not involve a contract, plaintiffs

18   must show an existing economic relationship with a reasonable probability of future economic

19   benefit to the plaintiff. *Youst*, 43 Cal. 3d at 71.  This requirement has been met.

20   TCC specifically alleges that, but for the intentional interference of Focus and

21   eScription, TCC would have maintained its business relationship with JMH into the foreseeable

22   future.  FAC ¶¶ 83; 108.  These allegations alone satisfy the requirement of showing reasonable

23   probability of future economic benefit for pleading purposes.

24   TCC also alleges further supporting facts.  From the very beginning, JMH assured

25   TCC that the business relationship between them would continue so long as TCC met

26   expectations and performed its duties.  FAC ¶ 11.  Only about a year before eScription and Focus

27   began interfering with the JMH-TCC relationships, JMH had agreed to an extension of their

28   Services Agreements that purported to give to TCC JMH's continued business through at least

1   the year 2007.  FAC ¶ 32.  Not long thereafter, eScription sold its software to JMH with false

2   promises that the improved technology would reduce JMH's transcription costs, and began

3   pressuring JMH to switch its transcription service provider to one of eScription's "MTSO

4   Alliance Program" members, such as Focus.  FAC ¶¶ 40-42; 46-48; 50-52; 80.  Focus, in turn,

5   misrepresented to JMH that it would perform the same services as TCC for a lower price – using

6   eScription's software – but *without* the use of foreign labor.  FAC ¶¶ 55-57; 81.

7          If JMH had known that eScription's promised "cost savings" resulted not from its

8   software's technological advantages – as eScription had represented – but rather from the use of

9   foreign labor by its "MTSO Alliance Program" providers, JMH would not have purchased

10  eScription's software or given its business to one of eScription's "MTSO Alliance Program"

11  members.  FAC ¶¶ 40-42; 46-48; 50-52; 80; 83; 108.  Likewise, if Focus had not continued

12  eScription's lie by representing that it would provide transcription services at a low cost without

13  use of foreign labor (and then secretly using foreign labor to drive down its production costs),

14  JMH would not have discontinued its relationship with TCC.  FAC ¶¶ 55-57; 81; 83; 108.

15         JMH gave no reason for abandoning TCC other than the desire to save money

16  through the use of eScription's software.  FAC ¶ 60.  JMH had no complaints about TCC's

17  services.  FAC ¶ 59.  Moreover, JMH did not want its transcription work done overseas.  JMH

18  apparently felt so strongly about this that it asked TCC to sign an addendum to the Services

19  Agreement specifically prohibiting the use of foreign transcription labor.  FAC ¶ 36.

20  Accordingly, JMH would not have abandoned its contract and business relationship with TCC

21  and used Focus' services instead if it had known that Focus would use foreign labor, and would

22  not have purchased eScription's software if it knew that the "cost savings" eScription promised

23  had nothing to do with technological advantages, and everything to do with the use of cut-rate

24  foreign labor resources by its "MTSO Alliance" members, including Focus.

25         The Nuance Defendants argue that TCC's pleadings are inadequate against

26  eScription because JMH could have continued to use TCC for transcription services after

27  purchasing the eScription software.  *See* Nuance Defendants' Motion, at 14:1-8.  This argument

28  ignores the fact that eScription had a partnership with Focus as part of its "MTSO Alliance

1  Program," and actively encouraged JMH to switch its transcription services away from TCC and
2  to an "MTSO Alliance" member, such as Focus. FAC ¶¶ 50-51; 80. In any event, eScription
3  cannot request dismissal of TCC's complaint based on bare speculation concerning what JMH
4  theoretically *could have* done. Focus and eScription's misrepresentations and omissions were
5  calculated to induce JMH to breach its contract and abandon its relationship with TCC, and were
6  successful in that regard. TCC has stated intentional interference claims based on this conduct.

7        The Nuance Defendants further argue that TCC's pleadings are inadequate against
8  Focus because Focus' alleged misrepresentations occurred after JMH had already issued an RFP.
9  *See* Nuance Defendants' Motion, at 14:9-14. This argument relies upon the flawed presumption
10 that JMH had made a final decision to abandon TCC at the time it issued its RFP, regardless of
11 who responded to the RFP or what those responses said. Ultimately, this is yet another argument
12 reliant upon theoretical suppositions extrinsic to the pleadings that is improper at this procedural
13 stage. *See Buckey*, 968 F.2d at 794 (review of motion to dismiss pursuant to Federal Rule of
14 Civil Procedure 12(b)(6) "based on the contents of the complaint").

15              e.    **The Nuance Defendants' Interference With TCC's Business**
16                   **Relationship With JMH Was Accomplished Through**
17                   **Independently Wrongful Acts**

18        Finally, the Nuance Defendants argue that TCC's pleadings fail to allege that their
19 acts were "independently wrongful."[14] *See* Nuance Defendants' Motion, at 14:25-15:7. This
20 argument has no merit. TCC's complaint, in numerous instances, sets forth allegations
21 concerning the *fraudulent* acts of Focus and eScription in interfering with TCC's economic
22 relationship with JMH. *See, e.g.,* FAC ¶¶ 41-42; 46-48; 54-57; 72-74; 80-82; 96-98; 101-102;
23 104-108. Fraudulent misrepresentations in the context of business dealings are "independently
24 wrongful" for purposes of pleading intentional interference with business relations. *See, e.g.,*
25 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 991 (9th Cir. 2001) ("misrepresentations" and
26 other "unethical business practices" constitute "wrongful conduct").

27  _____
28        [14]   *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-393
   (1995) (complaint for interference with prospective economic advantage must plead that
   interference was wrongful "by some measure beyond the fact of the interference itself").

1    The Nuance Defendants' misguided characterization of TCC's allegations as

2   "suppositions and conjectures and hypotheses"[15] once again relates to adequacy of "proof" in a

3   procedural context where adequacy of pleading, not proof, is at issue. *See Lee*, 250 F.3d at 677;

4   *Love*, 915 F.2d at 1245. TCC has alleged that the Nuance Defendants' acts were "independently

5   wrongful." The Nuance Defendants do not, and cannot, show otherwise.

6        **D.    Nuance, as Successor-in-Interest to All Claims Against the Nuance**

7              **Defendants, is Properly Named as a Defendant in this Matter**

8                    The Nuance Defendants argue that Nuance should be dismissed because the

9   allegations set forth in the complaint concern acts taken by Focus and eScription, not Nuance

10  specifically. However, Nuance has acquired both Focus and eScription, including liabilities of

11  Focus and eScription, and is the successor-in-interest with respect to all claims alleged against

12  Focus and eScription. FAC ¶¶ 8; 89. Since both Focus and eScription are wholly owned

13  subsidiaries of Nuance, there is no prejudice in naming Nuance separately as a defendant.

14                   Further, as to the RICO claims, Nuance is, by virtue of its ownership and control

15  of both Focus and eScription, part of the alleged "association in fact" responsible for the alleged

16  RICO offenses. FAC ¶¶ 89; 95. Plaintiffs are "free to name all members of an association-in-

17  fact enterprise as individual defendants." *River City Markets, Inc. v. Fleming Foods West, Inc.*,

18  960 F.2d 1458, 1462 (9th Cir. 1992). Nuance is an active participant in the ongoing, open-ended

19  fraudulent scheme at the heart of this case. *See* FAC ¶ 103. For these reasons, Nuance is

20  properly named as a defendant in this matter, and should not be dismissed.

21       **E.    Leave to Amend Should Be Granted, if Necessary, to Cure Any**

22              **Pleading Deficiencies**

23                   If this Court detects any pleading deficiencies in the FAC, TCC should be granted

24  leave to amend. Such leave is freely and liberally granted as a matter of judicial policy. *See* Fed.

25  R. Civ. P. 15(a)(2) (court should "freely give leave [to amend] when justice so requires"); *see*

26  *also Livid Holdings*, 416 F.3d at 946 (dismissal of complaint without leave to amend "is

27  improper unless it is clear that the complaint could not be saved by any amendment").

28

---

[15]    *See* Nuance Defendants' Motion, at 15:4-7.

471.01.PLE.oppo.nuance.mot.dismiss.Brief.wpd          24

PLAINTIFF'S OPPO. TO NUANCE DEFENDANT'S MOTION TO DISMISS FAC – 08-CV-04418 TEH

1

## IV.   CONCLUSION

2          For the foregoing reasons, this Court should deny Focus Infomatics, Inc.'s,

3    eScription's, and Nuance Communications, Inc.'s Motion to Dismiss TCC's First Amended

4    Complaint.

5

6    Dated: December 15, 2008                    MENNEMEIER, GLASSMAN & STROUD LLP
                                                  KENNETH C. MENNEMEIER
                                                  LANDON D. BAILEY

7

8                                  By:   _Kenneth C. Mennemeier_

9                                        Kenneth C. Mennemeier
                                         Attorneys for Plaintiff

10                                       Transcription Communications Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Case Name:    *Transcription Communications Corporation v. John Muir Health, et al.*

2    Case No:    U.S. District Court, Northern District, Case No.: 08-CV-04418-THE

3    **CERTIFICATE OF SERVICE**

4    I declare as follows:

5    I am a resident of the State of California and over the age of eighteen years, and

6    not a party to the within action; my business address is 980 9th Street, Suite 1700, Sacramento,

7    California 95814. On December 15, 2008, I served the within documents:

8

9    **PLAINTIFF TRANSCRIPTION COMMUNICATIONS CORPORATIONS'
OPPOSITION TO DEFENDANTS FOCUS ENTERPRISES LIMITED, eSCRIPTION,
INC., AND NUANCE COMMUNICATIONS, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

10

11

12    ☒    by placing the document(s) listed above in a sealed Federal Express
envelope and affixing a pre-paid air bill, and delivering to a Federal
13    Express agent for delivery.

14

15    James D. Holden
Hanson Bridgett LLP
16    425 Market Street, 26th Floor
San Francisco, CA 94105

17

18    I am readily familiar with the firm's practice of collection and processing

19    correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal

20    Service on that same day with postage thereon fully prepared in the ordinary course of business.

21    I declare that I am employed in the office of a member of the bar of this Court at

22    whose direction this service was made.

23    Executed on December 15, 2008, at Sacramento, California.

24

25    Melissa Haagensen

26

27

28

471.01.PLE.Certificate of Service.mlh.wpd